DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Giant Eagle, Inc., et al., ) | |
| ) | CASE NO. 04:06CV0432 |
| Appellants/Cross-Appellees. ) | |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| Phar-Mor, Inc., ) | |
| ) | |
| Appellee/Cross-Appellant. ) | |
| ) | |

## I. INTRODUCTION

This matter involves a dispute over what amounts of rent should be paid by a Chapter 11 debtor for the use of warehouse equipment both before and after the debtor's lease is rejected. Giant Eagle, Inc. and Value Eagle Associates[1] appeal the January 6, 2006 Memorandum Opinion and Order of the United States Bankruptcy Court, Northern District of Ohio, the Honorable Kay Woods, in Bankruptcy Case No. 01-44007. The debtor in that bankruptcy case, Appellee Phar-Mor, Inc. ("Phar-Mor"), has filed a cross-appeal from the same Memorandum Opinion and Order. Giant Eagle has filed a brief (Docket No. 10) and reply brief in support of its appeal and responding to the cross-appeal (Docket No. 14). Phar-Mor has filed a brief (Docket No. 13) and reply brief opposing the appeal and in support of its cross-appeal (Docket No. 15).

For the following reasons, the Order of the Bankruptcy Court is affirmed.

---

[1] For purposes of this appeal, the Court will refer to these related entities as "Giant Eagle." In fact, however, Giant Eagle and Value Eagle entered into two separate leases as described in the Memorandum Opinion.

## II. FACTUAL BACKGROUND

A. Facts Relevant to the Claims of Appellants Giant Eagle/Value Eagle

Phar-Mor formerly operated a chain of discount drugstores with its principal headquarters in Youngstown, Ohio.  On May 1, 1995, Phar-Mor entered two long term lease agreements with Giant Eagle for warehouse equipment located at the Tamco warehouse in Austintown, Ohio.  The Tamco warehouse was designed as a distribution center and the warehouse equipment provided for in the lease enabled Phar-Mor to store and distribute its goods from that location.[2] The first warehouse equipment lease, with Giant Eagle, was for monthly payment of $44, 496.45 ("Lease One") and the second, with Value Eagle, was for $1,832.46 per month ("Lease Two"). Both warehouse equipment leases were to terminate on September 1, 2008–thirteen (13) years and four (4) months after the commencement date.[3]

On September 24, 2001, Phar-Mor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.  On July 18, 2002, a United States Bankruptcy Court authorized a Sale Order of substantially all Phar-Mor assets, including Phar-Mor's entire inventory at the Tamco warehouse, to several agencies.  The July order also authorized Phar-Mor to terminate its business operations at the Tamco warehouse and reject the real property lease for the warehouse.  Subsequently, pursuant to a September 30, 2002 Court order, Phar-Mor rejected both warehouse equipment leases with Giant Eagle.

---

[2] There is nothing in the record before the Court that describes exactly what constitutes "warehouse equipment" but the Court presumes that pallets, racks, tow motors, rollers  and conveyor belts constituted all or part of the warehouse equipment.

[3] The Court notes that the parties also entered into separate real property leases for the warehouse that are not at issue in this appeal. The two leases at issue herein solely dealt with equipment leases related to the warehouse.

2

On October 31, 2002, Giant Eagle entered into two leases with Snyder Drugstores, Inc. ("Snyder") for the same warehouse equipment covered by the two Phar-Mor leases (Lease One and Lease Two) at the same rental rate, but for four (4) years longer (ending on October 21, 2012).[4]

On September 11, 2003, Snyder filed for bankruptcy. Subsequently, on November 30, 2003, Snyder rejected the Giant Eagle leases for the Tamco warehouse and returned the equipment. Giant Eagle tried unsuccessfully to re-lease the equipment. As a result, Giant Eagle sold some warehouse equipment, moved less than ten percent (10%) of the equipment to use elsewhere and abandoned the rest.

Giant Eagle is now suing Phar-Mor for damages as a result of Phar-Mor's September 30, 2002 rejection of the warehouse equipment leases. The district court denied Giant Eagle its request for any lease damages after Giant Eagle entered into the lease with Snyder. On appeal, Giant Eagle is seeking post-lease rejection damages it claims on the original Phar-Mor lease that arose as a result of the Snyder bankruptcy. Giant Eagle seeks damages from Phar-Mor beginning at the lease rejection date, September 30, 2002 to the end of the original Phar-Mor equipment lease term in 2008, minus any amounts that Giant Eagle received in rent from Snyder or from Snyder in its bankruptcy claims against that debtor.

B. Facts Relevant to Appellee Phar-Mor's Cross Appeal

Giant Eagle also sought from the bankruptcy court an administrative claim for pre-rejection lease damages from July 18, 2002 (the date the bankruptcy court ordered the sale of

---

[4] It is undisputed, and it is part of the Bankruptcy Court's order, that Giant Eagle and Value Eagle have an allowed claim for unpaid rent for one month, from September 30, 2002 to October 31, 2002.

assets) to September 30, 2002 (the date the equipment leases were rejected). Whether or not administrative rent should be charged to Phar-Mor during that time period forms the substance of the cross appeal.[5] The bankruptcy court recognized Giant Eagle's claim for administrative rent from July 18, 2002, the date on which the bankruptcy court ordered the sale of assets, to September 30, 2002, the date the warehouse equipment leases were rejected. For this time period, the bankruptcy court awarded damages in the amount of $109,088.70 for Lease One and $4,492.48 for Lease Two. Phar-Mor has filed a cross-appeal to that determination.

As a factual matter, on July 18, 2002, Phar-Mor yielded access to the facility to Giant Eagle. However, court approved liquidators for Phar-Mor used the equipment to inventory goods at the warehouse that benefitted both parties to this appeal. The liquidators arranged for Giant Eagle to purchase a large amount of non-private label warehouse inventory, which benefitted Giant Eagle because Giant Eagle paid a reduced price for the inventory. Phar-Mor benefitted because Giant Eagle's purchases increased the assets of the debtor's estate.

### III. STANDARD OF REVIEW

Giant Eagle elected to have its appeal of the bankruptcy court's order heard by this Court pursuant to Rule 8001-3 of the Bankruptcy Rules of Appellate Procedure. The Court applies the clearly erroneous standard to the bankruptcy court's findings of fact and reviews de novo the bankruptcy court's conclusions of law. In re American Home Patient, Inc., 414 F.3d 614 (6th Cir. 2005).

---

[5]The Bankruptcy Court also allowed, and it is not contested on appeal, an administrative rent claim from the date the petition was filed, September 24, 2001 to the day before the sale of assets was ordered, July 17, 2002.

IV. DISCUSSION

A. Giant Eagle's Claim for Post-rejection Equipment Lease Damages

It is undisputed that Phar-Mor rejected the equipment leases at issue on September 30, 2002 and that six years remained on the lease. All parties also agree that Pennsylvania law, as required by the leases, should be used to determine any conflicts related to enforcement of the leases. In the absence of mitigation, Giant Eagle would be entitled to a claim for the remaining term of the lease.

In this case, Giant Eagle entered into a long term lease arrangement with Snyder that fully mitigated its losses, except for one month of lost rent that the bankruptcy court recognized as an allowed claim.

Giant Eagle argues on appeal that, under Pennsylvania law, the lease it entered into with Snyder did not remove the continuing legal obligation of Phar-Mor in the event Snyder later defaulted. As stated in its brief: "Phar-Mor's liability was not terminated by the mere execution of the Snyder leases; only full performance of those leases would release Phar-Mor." (Docket No. 10, Appellants' Brief at 6).

None of the cases cited by Giant Eagle, however, demonstrate that Phar-Mor's lease obligations could be revived after they were mitigated and supplanted by the new leases with Snyder.  The Court agrees with the bankruptcy court's holding:

> This Court holds that, once a lessor mitigates damages by re-letting the equipment, the lessor cannot claim damages from the debtor for the period covered by the new lease–even if subsequently the new lessee defaults in its obligations to the lessor. To hold otherwise would require the Court to attempt to forecast the viability of each lessee in a mitigating lease to determine of the mitigation will be 'successful.'"

Memorandum Opinion, at 14.

The bankruptcy judge recognized that Giant Eagle made its own business decision with respect to entering into the new lease with Snyder and could have protected itself by requiring "some kind of security or different lease terms" that might result from a possible breach by Snyder and concluded that if the Court approved the arrangement sought by Giant Eagle, the debtor Phar-Mor would have become a guarantor or co-debtor with Snyder. Id.

The Court agrees with the reasoning and conclusions stated by the bankruptcy court on this issue on appeal and the Order, as it relates to denying Giant Eagle's request for post-rejection equipment lease damages, is affirmed.

B. Phar-Mor's Appeal of the Award of Pre-rejection Administrative Rent

For its cross-appeal, Phar-Mor objects to the payment of administrative rent pursuant to former Bankruptcy Code Section 365(d)(10) (now 365(d)(5)) for the period between July 18, 2002 when the assets were ordered to be sold and September 30, 2002, the date the trustee rejected the equipment leases. This code section states in part:

> The trustee shall timely perform all of the obligations of the debtor, except those specified in section 365(b)(2), first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property. . .until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title, unless the court, after notice and hearing and based on the equities of the case, orders otherwise with respect to the obligations or timely performance thereof.

As the Ninth Circuit observed in In re At Home Corporation, 392 F.3d 1064 (9th Cir. 2004) this code section "makes clear that the debtor must perform all obligations owing under a lease–particularly the obligation to pay rent at the contract rate–until the lease is rejected." 392 F.3d at 1068.

The bankruptcy court found, under both Section 365 and Section 503(b)(1), that use of the

6

leased equipment benefitted Phar-Mor in the period between the sale approval date and when the lease was rejected. The bankruptcy court went on to consider whether the equities of the case weighed against an allowable administrative claim for Giant Eagle. There is no disagreement among the parties that pursuant to what is now Section 365(d)(5), it is the debtor who must persuade the court, based on the equities of the case, that such rent should not be paid or should be reduced by some amount.  See In re Elder Beerman, 201 B.R. 759, 763 (S.D. Ohio 1996).

The bankruptcy court stated that it was not persuaded that the equities of the case required a denial or reduction of Giant Eagle's claim. Phar-Mor argues that by rejecting the real property lease in July 2002, it had abandoned to Giant Eagle the right to enter the premises. To require continued payments on abandoned property, Phar-Mor argues, is unfair.

But as the bankruptcy court noted, Phar-Mor could have, but decided against, rejecting the equipment leases until more than two months after it rejected the real property lease to the warehouse. Memorandum Opinion, at 21. During that time period, the inventory in the warehouse was liquidated, with both parties to the appeal reaping the benefits.

Finally, Phar-Mor argues that the stipulated facts before the bankruptcy court "were insufficient to permit it to arrive at the conclusion that the equities did not warrant reduction" of Giant Eagle's claims. (Docket No. 15, Reply Brief at 9). The Court disagrees and concludes that Judge Wood's Memorandum Opinion provides ample support for concluding that the equities did not favor Phar-Mor in this matter.[6] For these reasons, the judgment of the bankruptcy court, as it relates to the cross-appeal, is affirmed.

---

[6] In responding to Giant Eagle's motion for summary judgment, the burden falls to Phar-Mor to supply facts that would, if construed in a light most favorable to its position, lead to a different conclusion.

## V. CONCLUSION

The January 5, 2006 Order of the Bankruptcy Court in Bankruptcy Case No. 01-44007 is AFFIRMED.

IT IS SO ORDERED.

| | |
|---|---|
|  July 28, 2006 |  */s/ David D. Dowd, Jr.* |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |